MODERN WOODMAN ACCIDENT ASSOCIATION v. CELIA V. SHRYOCK.

FILED MARCH 17, 1898. No. 7927.

1. **Insurance:** APPLICATION: WARRANTIES. Statements contained in an application for the issue of a policy of insurance will not be construed as warranties unless the provisions of the application and policy taken together leave no room for any other construction.

2. ———: CAUSE OF DEATH: QUESTION FOR JURY. Whether an accident or a disease caused the death of a party whose life was insured against death by accident should be submitted to. and determined by, a jury, unless, with reference to that proposition, the proofs are so convincing that by them all reasonable men in the fair exercise of their judgment would be brought to adopt the same conclusion.

3. ———: ———: EVIDENCE. Where an accident insurance association introduced evidence of the statements of one of its members with reference to an accident which had happened to him some hours before the time of making such statements, it cannot complain because the same statements, made to other witnesses, were proved by the adverse party.

4. ———: FRATERNAL BENEFIT ASSOCIATIONS: ESTOPPEL. In an action for the recovery of the sum of $3,000 insurance on a certificate issued by a fraternal benefit association to one of its members it cannot be permitted to urge that the said certificate limits the amount payable to the proceeds of an assessment of $2 on each member, and that there is, therefore, a question whether thereby

$3,000 could be realized in view of the fact that the statute to which such association owes its existence forbids it to issue a certificate of over $1,000 if it has not a membership of 2,000 in number.

5. **Review: EXCLUSION OF EVIDENCE.** The supreme court cannot assume that the rejection of written evidence was prejudicially erroneous when there is in the record before it no showing as to the nature of the evidence rejected.

ERROR from the district court of Lancaster county. Tried below before HALL, J.   *Affirmed.*

*A. R. Talbot,* for plaintiff in error.

*J. H. Broady* and *A. N. Sullivan, contra.*

RYAN, C.

This action was brought in the district court of Lancaster county by Celia V. Shryock to recover the amount of insurance existing in her favor by the terms of a certificate of membership issued to her husband whereby his life was insured against death by accident within ninety days.   There was a verdict and judgment as prayed, and for the reversal of this judgment the association prosecutes this proceeding in error.

In the petition it was alleged that May 6, 1892, in consideration of $3 as a membership fee paid by William B. Shryock for plaintiff, and of such future payments as might be required under defendant's articles of incorporation, the defendant had made and delivered to said William B. Shryock its policy and certificate of insurance on the life of said William B. Shryock, in the sum of $3,000, and that plaintiff was the wife of William B. Shryock and was the beneficiary in said policy.   It was further averred that on or about July 2, 1892, while said policy was in full force, said William B. Shryock received a personal injury in the city of Omaha, from which injury, shortly thereafter, the death of said William B. Shryock resulted.   It was further alleged that due proof of the death of William B. Shryock had been made, but

that defendant, nevertheless, had refused to pay or make an assessment for the payment of the amount due plaintiff, or any part thereof. There was a prayer for judgment in the sum of $3,000 with interest, which principal and interest equaled the sum for which the verdict was returned. The material portions of the answer were averments that William B. Shryock died of a disease not the result of any injury alleged to have been by him received; that there had been no compliance with the requirements of the policy as to proofs of injury, and that there had been no request for an assessment upon the members of defendant in good standing, under its rules, for the payment of the claim of plaintiff. It was further alleged that the defendant had never made an assessment upon its members for the payment of the claim set out in plaintiff's petition, and that defendant neither had nor would have in its possession any means wherewith to pay the same until such assessment should be levied and collected. There was in the answer the following language: "Further answering, the defendant alleges the fact to be that at the time of making the application for membership to the defendant, plaintiff's intestate, William B. Shryock, represented and warranted to the defendant, as a condition precedent and as a basis upon which the policy sued on herein was issued, that he never had, nor was subject to, fits, disorders of the brain, or never had or was subject to any bodily or mental infirmity; that, relying upon said statements, representations, and warranty that said William B. Shryock did not then or never did have any bodily or mental infirmity, the defendant issued and delivered to him the certificate or policy of insurance sued on herein, but the defendant avers that at the time of making said application and tendering to the defendant said statements and representations and warranties as aforesaid said William B. Shryock did then have bodily and mental infirmities which would tend to shorten life and which, in fact, did produce the death complained of in plaintiff's

petition, and that by reason thereof there was a breach of said warranties and conditions precedent which made void the policy issued and sued upon herein, and although said William B. Shryock at that time represented and warranted to the defendant that he did not have any bodily or mental infirmity, yet the defendant charges the fact to be that at that time said William B. Shryock did have fatty degeneration of the heart or heart disease, which would tend to shorten life, and from which weakness and defect of the heart he, the said William B. Shryock, died." There was a reply in denial of each affirmative matter pleaded in the answer. On the trial there was submitted to the jury certain special interrogatories, which, with the answer to each, were as follows:

"1. Did William B. Shryock, on or about the 2d day of July, 1892, meet with an accident in the city of Omaha, Nebraska, whereby he received external and violent bodily injury? Answer: Yes.

"2. Did William B. Shryock, prior to and at the time of his death, have fatty degeneration of the heart? Answer: Yes.

"3. If you answer that William B. Shryock received an accidental, external, and violent bodily injury, did that injury alone cause his death? Answer: Yes.

"4. If you answer that William B. Shryock, prior to and at the time of his death, had fatty degeneration of the heart, did that disease alone cause his death? Answer: No.

"5. What was the cause of the death of William B. Shryock? Answer: By violent bodily injury, he at the time having fatty degeneration of the heart."

There was some conflict in the evidence, but as the jury accepted as true that which tended to sustain the theory of plaintiff, it is unnecessary to consider any other in determining whether or not there was sufficient to sustain the special findings above quoted. James M. Robinson was a witness for the defendant in the district court and testified that on July 1 or 2, 1892, he met

William B. Shryock about half-past five in the afternoon and, by appointment, still later in the evening. The testimony of this witness in part was as follows:

Q. Now, did he say anything to you up to that time about slipping and hurting his leg?

A. Yes, sir. He told me several times that his foot had slipped and he had hurt his knee.

Q. He told you several times during the two hours you were with him?

A. Yes, sir.

Q. What did you say he said about that?

A. He said his foot had slipped and that he had wrenched his knee and that it was hurting him.

Q. What knee was that?

A. I think it was the left knee, I am not sure, but it was the same knee he had hurt before.

Q. The same knee that was broken before?

A. Yes, sir.

Q. What did he say at that time about having recently removed the splints or bandages that the doctor had on the knee?

A. He said he had been wearing a bandage or a brace or something and that he had taken it off lately, or something to that effect. I don't know how recently he had taken it off.

William Darst, a witness for the plaintiff, testified that he saw William B. Shryock at the store of witness in Omaha about 8 o'clock in the evening of July 1, 1892; that Shryock looked to witness like a man about to faint, was pale and trembling, and complained that he had hurt himself; that in coming up from the depot he had slipped and partially fallen and that it pained him terribly right over his right hip. He kept his hand rubbing his side and acted as if he was sick in his stomach. He was spitting as if he was sick in his stomach. He remained over two hours from the time he came in. Usually witness closed up at 9 o'clock at night, but his reason for not closing at that time, July 1, 1892, was given thus in his

own language: "The condition he came in my store and seeing that he was in pain I stayed around an hour later than usual, thinking he would get better, and in fact he did get better; I wanted him to rest." This witness accompanied Mr. Shryock to the Murray Hotel. William Anderson, clerk at that hotel, testified that William B. Shryock came to the hotel about 10 o'clock of the night of July 1, 1892, and witness, upon shaking hands with him noticed that Shryock's hand was very cold. Upon being asked about his health, Shryock said he was not feeling well and asked if witness could spare a boy to go out and get some capsules. These were procured, as was also some whisky, and he went to his room. Frank Wigginton, the boy who procured the capsules, testified that they were quinine capsules and that he showed Mr. Shryock to his room. In the afternoon of July 2, 1892, Mr. Shryock was found dead in his bed in the room to which he had been conducted by Wigginton. A post-mortem examination was held, and the result of their investigations, as detailed by the doctors who conducted the same, was to the following effect: Dr. Rebert said he found a contusion or abrasion over the right hip of Mr. Shryock; that his heart was large and dilated, filled with dark fluid, blood. The contusion was of recent occurrence. There was nothing in the condition of the remains that would indicate that he would not have lived an indefinite time. The cause of his death was heart failure induced by a shock and injury. The contusion indicated a fall which might have caused the death of Mr. Shryock. The contusion was somewhat larger than the palm of a large hand. In relation to the opinion that Mr. Shryock might have lived an indefinite time Dr. Rebert testified: "I mean by that, if no accident had occurred, no stage of sickness intervened, and in his ordinary regular life, that in all probability his heart would have been capable of carrying on its functions for an indefinite length of time." Dr. Rebert further testified that while a fall, such as was indicated by the contusion

to have taken place, would bring on heart failure, death might not follow before thirty-six hours. Dr. Lee testified that he took part in the post-mortem examination described by Dr. Rebert, and that there was found the abrasion or contusion described by Dr. Rebert. Dr. Lee also testified that they found an abrasion of the skin on the knee of Mr. Shryock, and that both the abrasion on the hip and that on the knee were of recent occurrence. He said that the death of Mr. Shryock was due to his getting injured and not having sufficient vital capacity to recover from it; that in the condition in which Mr. Shryock's heart was, it was possible for him to die the minute he sustained the injury, or he might have had sufficient vitality to live a few hours afterwards. On cross-examination Dr. Lee testified that the condition of Mr. Shryock was such that any shock or any blow would produce a shock which would so affect his heart that it would not have inherent strength enough to respond, consequently a fainting would follow which he could not, and in this case did not, recover from.

It seems to us that the special findings were in all respects supported by the testimony just quoted. There was no attempt to show that Mr. Shryock might not have been ignorant of any abnormal condition of that vital organ. There was, therefore, no fraudulent or willfully false representation as to the existence of such conditions as would have led to the rejection of the application for insurance had their existence been known to the company. In the membership certificate it was recited that it was issued in consideration of the warranties in the application as well as in consideration of the payment of the premium. In his application Mr. Shryock said: "I never had or am I subject to fits, disorders of the brain, or any bodily infirmity." With reference to payment in case of death the provision of the policy was as follows: "And the said association agrees to pay to Celia V. Shryock, wife, if living, * * * the sum of $3,000 if the death of the certificate holder shall result from such

injuries alone within ninety days from the date of said accident." Upon these provisions the insurance company founds two arguments: One is that the representation as to the physical condition of Shryock was a warranty broken when made because of the existence of fatty degeneration of his heart; the other is that the death of the insured was not attributable solely to the accident which caused the one or more abrasions observed by the physicians. In respect to the alleged warranty the following language quoted from the syllabus in *Kettenbach v. Omaha Life Ass'n,* 49 Neb. 842, is applicable: "Statements contained in an application for a policy of insurance will not be construed as warranties unless the provisions of the application and policy, taken together, leave no room for any other construction. In construing a contract, for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the subject-matter of the contract, and the language employed, and will consider a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements." In line with these propositions it was held in the case just cited that, for representations to constitute a defense to an action on the policy, it is incumbent on the insurance company to prove the warranties were made as written in the application; that they were false in some particular material to the insurance risk; that they were made intentionally by the insured; that the insurance company relied and acted upon such statements, and these are questions of fact and not questions of law. By its general verdict the jury settled this claim of warranty adversely to the contention of the insurance company and its solution must control. (*Travelers Ins. Co. v. Melick,* 65 Fed. Rep. 178.)

In support of its argument that the accident was not the proximate cause of the death of Mr. Shryock there has been cited *National Masonic Accident Ass'n v. Shryock*, 73 Fed. Rep. 774. The action in the case just referred to was on a policy in another company than plaintiff in error, but in all other respects there were involved the same circumstances as are presented by this case. In view of the extended consideration of cases rendered necessary by the holding of the circuit court of appeals of the eighth circuit of the United States as formulated by Sanborn, J., in the case last referred to, we have purposely hitherto refrained from citations of authorities. Of this, the most important question involved in the case under consideration, we believe the cases hereinafter referred to in the discussion of the opinion delivered by Sanborn, J., will be found to furnish a very satisfactory solution. From this opinion we quote the following language: "The certificate of membership in this accident association, on which this action is based, contained the covenant of this corporation to pay to the defendant in error the indemnity it promised in case the death of William B. Shryock resulted within ninety days from the date of any accident, solely because of bodily injuries effected by external, violent, and accidental means, and independently of all other causes; and it also contained an express agreement that the insurance promised thereby should not cover any death which resulted wholly, or in part, directly or indirectly, from disease or bodily infirmity. The defendant in error alleged that Shryock's death was caused by an injury to him which resulted from an accidental fall on the street. The association denied this allegation and alleged that if he was injured by such a fall, his death was not caused by that alone, but resulted wholly, or in part, from some disease of his heart. The burden of proof was upon the defendant in error to establish the facts that William B. Shryock sustained an accident, and that that accident was the sole cause of his death, independently of all other

causes.   If Shryock suffered such an accident and his
death was caused by that alone, the association agreed
by this certificate to pay the promised indemnity; but
if he was affected with a disease or bodily infirmity which
caused his death, the association was not liable under
this certificate, whether he also suffered an accident or
not.   If he sustained an accident, but at the time it oc-
curred he was suffering from a pre-existing disease or
bodily infirmity, and if the accident would not have
caused his death if he had not been affected with the
disease or infirmity, but he died because the accident
aggravated the effects of the disease, or the disease ag-
gravated the effects of the accident, the express contract
was that the association should not be liable for the
amount of this insurance.   The death in such a case
would not be the result of the accident alone, but it would
be caused partly by the disease, and partly by the acci-
dent, and the contract exempted the association from
liability therefor.   These propositions have been so lately
discussed and affirmed by this court that we content our-
selves with their statement. (*Travelers Ins. Co. v. Melick,* 27
U. S. App. 547, 12 C. C. A. 544, 547, and 65 Fed. Rep. 178,
181; *United States Mutual Accident Ass'n v. Barry,* 131 U.
S. 100, 111, 112, 9 Sup. Ct. Rep. 755; *Freeman v. Mercantile
Mutual Accident Ass'n,* 156 Mass. 351, 353, 30 N. E. Rep.
1013; *Anderson v. Scottish Accident Ins. Co.,* 27 Scot. L. R.
[Scotland] 20, 23; *Smith v. Accident Ins. Co.,* 5 L. R. Ex.
[Eng.] 302, 305; *Standard Life & Accident Ins. Co. v.
Thomas,* 12 Ky. Law Rep. 715; *Marble v. City of Worcester,*
4 Gray [Mass.] 395, 397; *National Benefit Ass'n v. Grau-
man,* 107 Ind. 288, 290, 7 N. E. 233.)"   In the opinion from
which the above quoted language was taken it was said:
"The sufficiency of the evidence in this case to warrant
the verdict is not before us for consideration, because the
record before us discloses the fact that only a portion of
the evidence presented to the court below is contained in
the bill of exceptions."   While this language was used,
there was nevertheless in the opinion such a statement of

the facts as showed that, for some purposes, the bill of exceptions was in fact used. We shall now review the authorities cited in the opinion to sustain the propositions that the insurer was not liable if, at the time of the accident, the insured was suffering from a pre-existing disease, and death would not have resulted from the accident in the absence of such disease, but the insured died because the accident aggravated the effects of the disease, or the disease the effects of the accident.

The opinion in *Travelers Ins. Co. v. Melick, supra,* was written by Sanborn, J., and in it were recited the following conditions of the policy sued on, to-wit: "This insurance does not cover disappearances nor suicide; sane or insane;   *   *   *   nor accident, nor death   *   *   * resulting wholly or partially   *   *   *   from   *   *   * disease or bodily infirmity, hernia, fits, vertigo, sleepwalking   *   *   *. intentional injuries (inflicted by the insured or any other person)." The action of Melick, the administrator, was brought on the policy and in the petition it was alleged that the death of the intestate, Dr. Robbins, was caused by an accidental gun-shot wound in the foot. The answer denied this allegation and alleged that death was caused by the intentional self-inflicted injury of Dr. Robbins in cutting his own throat with a scalpel. We quote from the opinion this language: "There was evidence that the doctor accidentally sent a bullet through the fleshy portion of his foot, June 1, 1890; that the wound thus caused became very painful, confined him to his bed, caused a fever and gradually reduced his strength, until he died, June 18, 1890; that this gun-shot wound was just such an injury as would naturally produce tetanus or lock-jaw; that the doctor and his physicians feared that disease from the first, and, that they used chloral and chloroform to relieve the pain and ward off this disease; that in the early morning of June 18, 1890, while the deceased was alone in his room, he was seized with tetanus; that this disease causes the most excruciating pains that human beings ever suffer; that it

is fatal in a vast majority of cases; that it produces spasms or convulsions, and sometimes causes death by a spasm of the larynx, which prevents the passage of air through the trachea to or from the lungs; that the doctor was found dead in his bed June 18, 1890, with a scalpel in his right hand and his trachea and both his jugular veins cut; that the tetanus was sufficient to produce death and the throat cutting was sufficient to produce it." In this connection there was a reference to the evidence tending to establish each theory as to the proximate cause of death, after which there was this language: "Under this state of the evidence, it is assigned as error that the court below refused to instruct the jury to return a verdict for the insurance company; and it is contended that the question whether the shot wound which caused the tetanus, or the throat cutting, was the proximate cause of the death was a question of law for the court. In *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, 474, 476, Mr. Justice Strong, who delivered the opinion of the court, said: 'The true ruling is that what is the proximate cause of an injury is, ordinarily, a question for the jury. It is not a question of science or legal knowledge. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding; and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally, or probably, connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time.' This opinion of the supreme court is a complete answer to the contention of the plaintiff in error here. (*Union P. R. Co. v. Callaghan*, 6 C. C. A. 205, 208, 56 Fed. Rep. 988.) It is urged that this question was for the court, and that the court was bound to declare that the cutting was the proximate, efficient, cause of the death in this case because the evidence was uncontradicted that the cutting was later in time than the shot wound, and was sufficient to cause the

death. This position might be maintained if the cutting was not itself produced by the shot wound, and if the evidence was uncontradicted, that the death would not have occurred as soon from the tetanus in the absence of the cutting. But the argument begs the primary question in the case, whether the cutting was a cause of the death at all. If it neither caused nor hastened the death of the insured, then it was in no sense a cause of it, and however new or sufficient it may have been to have caused it, it could not relieve the insurance company from a death whose sole cause was the accidental injury. This question was peculiarly one of fact. The insurance company had agreed to pay the promised indemnity for any death that resulted from the accidental shot wound alone. The question was, what did in fact cause the death,—the shot wound, the cutting, or both? Nor would this case be withdrawn from the effect of this rule if the evidence upon this question was undisputed, for the question is always for the jury where a given state of facts is such that reasonable men may fairly differ upon it. It is only when all reasonable men, fairly exercising their judgments, must draw the same conclusion from an admitted state of facts, that it becomes the duty of the court to withdraw a question of fact from the jury." Later than the above language was used, Sanborn, J., speaking for the court in this case said: "The objection that the findings of the jury [adverse to the theory of the insurance company] are contrary to the weight of the evidence cannot be considered by this court. In an action at law, this is a court for the correction of the errors of law of the court below, only. There was, as we have already held, sufficient evidence to warrant the submission of the question of the proximate cause to the jury in this case. The court below committed no error in weighing this evidence; that duty was performed by the jury and not by the court; and hence there is no ruling of the court in that regard for us to review, and it is not our province to review and correct the findings of the jury on

questions of fact properly submitted to them. (*Gulf, C. & S. F. R. Co. v. Ellis*, 4 C. C. A. 454, 456, 54 Fed. Rep. 481; *City of Lincoln v. Sun Vapor Street-Light Co.*, 8 C. C. A. 253, 257, 258, 59 Fed. Rep. 756.)"

The case cited next in *National Masonic Accident Ass'n v. Shryock, supra*, was *United States Mutual Accident Ass'n v. Barry*, 131 U. S. 100, in which the association sought the reversal of a judgment which had been rendered against it. On the trial in the lower court there had been embodied in an instruction the following language: "If, for example, the deceased sustained injury to an internal organ and that necessarily produced inflammation, and that produced a disordered condition of the injured part, whereby other organs of the body could not perform their natural and usual functions, and in consequence the injured person died, the death could be properly attributed to the original injury. In other words, if these results followed the injury as its necessary consequence, and would not have taken place had it not been for the injury, then I think the injury could be said to be the proximate or sole cause of death; but if an independent disease or disorder supervened upon the injury, if there was an injury,—I mean a disease or derangement of the parts not necessarily produced by the injury,—or if the alleged injury merely brought into activity a then existing, but dormant, disorder or disease, and the death of the deceased resulted wholly or in part from such disease, then it could not be said that the injury was the sole or proximate cause of the death." We have found no language other than that above quoted which tends to sustain the proposition in support of which it was cited. This was so very favorable to the plaintiff in error, however, that by that party it was not presented for consideration and consequently was neither approved nor disapproved in the appellate court. What was decided is fully stated in the syllabus, which was in this language: "A certificate or policy issued by a mutual accident association stated that it accepted B. as a member

in division AA of the association; 'the principal sum represented by the payment of $2 by each member in division AA,' not exceeding $5,000, to be paid to the wife of B. in sixty days after proof of his death from sustaining 'bodily injuries effected through external, violent, and accidental means.' B. and two other persons jumped from a platform four or five feet high to the ground, they jumping safely and he jumping last. He soon appeared ill, and vomited, and could retain nothing on his stomach, and passed nothing but decomposed blood and mucus and died nine days afterwards. In a suit by the widow to recover the $5,000, the complaint averred that the jar from the jump produced a stricture of the duodenum, from the effects of which death ensued. At the time of the death the association could have levied a two-dollar assessment on 4,803 members in division AA. Held, (1) It was not error in the court to refuse to direct the jury to find a special verdict as provided by the statute of the state; (2) the issue raised by the complaint as to the particular cause of death was fairly presented to the jury; (3) the jury were at liberty to find that the injury resulted from an accident; (4) the policy did not contract to make an assessment, nor make the payment of any sum contingent on an assessment or on its collection; and the association took the risks of those who should not pay."

In *Freeman v. Mercantile Mutual Accident Ass'n, supra,* the insured, who died of peritonitis localized in the region of the liver and induced by a fall, had previously had peritonitis in the same part, and the previous disease had produced effects which rendered him liable to a recurrence of it. In an action upon the policy by the widow of the insured the judge charged the jury that upon the question whether peritonitis, if that caused his death, was to be deemed a disease and the proximate cause of death within the meaning of the policy, depended the question whether or not, before and at the time of the fall, he was suffering with the disease. If

he was, then, although the disease was aggravated and made fatal by the fall, he could not recover; but if, owing to existing lesions caused by the disease, he not having the disease at the time, peritonitis was started, the defendant was answerable, although, if there had been a normal state of things, the fall would not have occasioned such a result. On appeal these instructions were approved, but in our opinion they fail to sustain the radical proposition in support of which they were cited in *National Masonic Accident Ass'n v. Shryock, supra.*

The case of *Anderson v. Scottish Accident Ins. Co., supra,* was one in which a suit had been brought upon a policy which provided that, to recover under it, an accident must be the direct cause of death, and that within three months, and that the company would not be liable for death arising from natural disease although accelerated by accident. Upon appeal it was held that it had not been proved that the accident had caused the death at all, and the court expressly reserved its opinion as to acceleration.

In *Smith v. Accident Ins. Co., supra,* the suit was on a policy against certain accidents, in which there was an express provision that the company did not insure against erysipelas or any other disease or secondary cause or causes arising within the system of the insured before, or at the time of, or following such accidental injury (whether causing such death directly or jointly with such accidental injury). The insured, on Saturday, accidentally cut his foot against the side of an earthenware pan. On the following Thursday erysipelas was caused by the wound, and but for the wound he would not have suffered from it. It was held by a majority of the court that the insurer was protected by the condition, and was not liable. In the discussion of this case great stress was laid on the proposition that the policy expressly excused the company from liability on account of erysipelas which might supervene as a result of an accident.

The following is the entire report of *Standard Life & Accident Ins. Co. v. Thomas, supra:* "In this action upon an accident insurance policy to recover for the death of the insured, the evidence showed that the insured fell on the 12th of June, bruising his side, that he was taken sick in a few days thereafter and died on the 2d day of July. The physicians testified that he died of typhoid fever, which did not result, and could not have resulted from the fall. A nurse of long experience testified that the insured did not have typhoid fever. Held, that the evidence preponderates so decidedly in favor of the theory that the insured died of a disease not brought on by the accident the court should have set aside a verdict in favor of plaintiff."

The syllabus in *Marble v. City of Worcester, supra,* correctly reflects all that was involved and decided in that case. It was as follows: "If a horse drawing a vehicle, though driven with due care, becomes frightened and excited by reason of the striking of the vehicle against a defect in the highway, frees himself from the control of the driver, turns, and, at the distance of fifty rods from the defect knocks down a person on foot in the highway, who is using reasonable care, the city or town bound to keep the highway in repair are not responsible for the injury so occasioned, though no other cause intervene between the defect and the injury. Thomas, J., dissenting."

In *National Benefit Ass'n v. Grauman, supra,* the applicability of the case is indicated by the following paragraph of the syllabus: "Where the risk is limited to a case of death proximately caused by physical injuries of which there shall be some visible external sign, the complaint must make such a case; but the fact that the injury produced apoplexy does not render it any less the cause of death."

This completes a review of all the cases cited in support of the second paragraph of the syllabus in *National Masonic Accident Ass'n v. Shryock, supra,* and it has failed

to convince us of the correctness of the principle in said paragraph embodied. In our opinion the question of what is the proximate cause of death in an action like that now under consideration, is a question of fact to be determined by the jury from a consideration of the evidence and the determination of this question should not be withdrawn from the jury unless, from an admitted state of facts, all reasonable men fairly exercising their judgments must draw the same conclusion. These propositions are sustained by the authorities cited in *Travelers Ins. Co. v. Melick, supra*, as well as by the adjudication of this court. (*Suiter v. Park Nat. Bank*, 35 Neb. 372; *Habig v. Layne*, 38 Neb. 743; *Chicago, B. & Q. R. Co. v. Hildebrand*, 42 Neb. 33; *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb. 642.) Whether the injury in this case was the proximate cause of the death of Mr. Shryock was purely a question of fact, for it involved the determination upon evidence of the relations between alleged causes and effects and nothing more. It cannot be said that the evidence was so clearly in support of one theory that no reasonable man, fairly exercising his judgment, could have refused his assent thereto. As to the proximate cause of the death of Mr. Shryock the special findings of the jury must be deemed conclusive, and in this condition we leave this branch of the case.

There was some contention that the statements of Mr. Shryock made a few hours afterwards as to the cause of the injury to him were not a part of the *res gestæ*, and, therefore, should not have been admitted in evidence. We have already quoted from the testimony of Mr. Robinson, a witness for the defendant in the district court, and a reference to this quotation will show that this witness, in response to interrogatories propounded by the defendant, repeated these statements of Mr. Shryock, consequently we cannot say that it was prejudicial error to permit the reiteration of these same statements by witnesses examined on behalf of plaintiff.

It was insisted that there should have been a demand

for an assessment under the terms of the policy before suit brought, and that only a court of equity could grant relief.    In the policy there was a provision that the association did not agree to pay to any certificate holder or beneficiary a greater sum than would be realized by said association from one assessment of $2 each upon all assessable holders of certificates, assessable at the date of the action.    It is provided in section 110, chapter 43, Compiled Statutes, with reference to fraternal benefit associations, that any such association shall not be permitted to issue a certificate to exceed the sum of $1,000 until it shall have at least 2,000 members.    The certificate in this case was for the sum of $3,000.    The association therefore could only insist that it had less than 2,000 members by showing affirmatively that it had been transacting business in violation of the terms of the statute which authorized its existence.    This could not be tolerated. As $2 per capita on a membership of 2,000 would realize more than the amount of the claim of Mrs. Shryock, there was no necessity for invoking the powers of a court of equity for an accounting and assessment.

It is urged that the court erred in refusing to permit the introduction of the written testimony of Dr. Leonhardt given on a former trial.    As this proposed testimony was not embodied in the bill of exceptions, it cannot be assumed that its rejection operated to the prejudice of the association.

It is not considered necessary to state at length the evidence in relation to an alleged oral instruction to the jury.    After a prolonged deliberation the jury was brought into the court room that it might be ascertained whether any assistance could properly be rendered toward bringing about an agreement upon a verdict, and the court, on finding this to be impossible, sent the jury back to its deliberation, requesting, however, that if possible the members should try to come to an agreement. No sufficient reason for concluding that this was prejudicial has been advanced and we can conceive of none.

The questions involved in these proceedings have been, in the main, considered as general propositions, whether they arose upon the introduction of testimony or upon the giving or refusal to give instructions. We have considered all the assignments of error and have found none to the prejudice of the plaintiff in error. The judgment of the district court is therefore

AFFIRMED.