## ALICE A. RYAN v. METROPOLITAN LIFE INSURANCE COMPANY.
## SAME v. BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES.[1]

December 29, 1939.

Nos. 32,103, 32,104.

[1]Reported in 289 N. W. 557.

*Patrick J. Ryan,* for appellant.

*Snyder, Gale & Richards,* for respondent Metropolitan Life Insurance Company.

*R. F. Merriam,* for respondent Benefit Association of Railway Employees.

STONE, JUSTICE.

Two actions, consolidated below, to recover benefits for accidental death. After verdicts for defendants, plaintiff appeals from the orders denying her motions for a new trial.

Plaintiff is the widow of the insured, John M. Ryan, and the beneficiary of both policies in suit. The policy of the Metropolitan Life Insurance Company assured the beneficiary $1,000 in event of death and an additional $1,000 after accidental death. The ordinary death benefit has been paid. The accidental death benefit could accrue only for death "as a result, directly and independently of all other causes, of bodily injuries sustained * * * solely through violent, external, and accidental means." It covered neither death "caused wholly or partly, directly or indirectly, by disease, or bodily or mental infirmity, or by medical or surgical treatment thereof," nor self-destruction.

The other policy, a certificate of membership in the Benefit Association of Railway Employees, entitled plaintiff to $500 for death of the insured resulting "independently of all other causes" from "bodily injury, caused through external, violent and purely accidental means."

The insured, Mr. Ryan, 63 years old when death overtook him, had long been the victim of cancer of the throat. April 14, 1937, he went to St. Luke's Hospital in St. Paul. The prognosis then had become one of early death. By May 14, he was weak from lack of food, mentally confused, and uncertain on his feet. Early that morning, he was visited by his nurse, who found him walk-

ing about the room. The nurse left for about five minutes. Returning, she found the room vacant.

There was but one window in Ryan's room, its sill three feet above the floor. The distance from inside of sill to outside of window ledge was 21 inches. But, for one standing on the floor, that distance would be increased by the presence, immediately inside the window, of a radiator and bedside table. The table appeared not to have been moved by Ryan. When the nurse first went into the room, the window was open about six inches. When she returned to find Ryan gone, it was open about two feet.

Ryan was found on the ground, 28 feet below his window. He died within an hour. His feet, when he was found, were toward the hospital wall, but six feet, eight inches away from it. He lay outside the railing of an areaway which, at this point, was let into the ground to admit light through the basement windows. The railing was five feet, three inches from the building wall and about four feet high.

Ryan's condition had been critical and hopeless for a long time. The doctor believed that death would come shortly. Ryan suffered intense and uncontrollable pain. He was given much morphine and other sedatives, but got only partial relief. He had extreme difficulty in swallowing, was unable to enunciate, and was in severe pain. The difficulty of eating was such that his doctor testified that he was practically starving himself to death. He was "depressed and despondent." He himself had declared that he was "getting tired of it all."

Assigned as error are (1) submission to the jury of the question whether Ryan died solely as a result of the fall; (2) an instruction that the burden was upon plaintiff to negative other causes of death; and (3) refusal to instruct that there is in law a presumption against suicide.

■ It is plain from the quoted policy provisions that a condition precedent to recovery was death of the insured by accident "independently of all other causes." That is the provision of the certificate of the Benefit Association. Somewhat more explicit,

but without more real meaning, is the language of the Metropolitan company's policy, excluding death "caused wholly or partly, directly or indirectly, by disease, or bodily or mental infirmity, or medical or surgical treatment thereof."

On this phase of the case we agree with the decision below, from which we quote:

"It seems to be well established in this state that where the evidence indicates that an active disease was present prior to the accident claimed to have caused death, which disease, by its nature, might have caused or contributed to the death, the burden is upon the plaintiff to negative, by the fair preponderance of the evidence, that such disease caused or contributed to causing the death. Mair vs. Minnesota Commercial Men's Assn. 198 Minn. 145, 269 N. W. 364; Jorstad vs. Benefit Association, 196 Minn. 568, 265 N. W. 814; Mair vs. Equitable Life Assurance Society, 193 Minn. 565, 259 N. W. 60; Strommen vs. Prudential Ins. Co. 187 Minn. 381, 245 N. W. 632; Milliren vs. Federal Life Ins. Co. 185 Minn. 614, 242 N. W. 290; White vs. Standard Life & Accident Ins. Co. 95 Minn. 77, 103 N. W. 735, 884, 5 Ann. Cas. 83. * * * See also annotations in 34 L.R.A. (N.S.) 445, and 52 L.R.A. (N.S.) 1203. * * * Modern Woodmen Accident Association vs. Shryock, 54 Neb. 250, 74 N. W. 607, 39 L. R. A. 826; see note in 19 Minnesota L. R. 244."

The statement in Clay v. New York L. Ins. Co. 183 Minn. 275, 236 N. W. 305, that there the burden of proof was on the insurer to show disease (hardening of the arteries) to have been a contributing cause of death was an inadvertence. In that case there was no question raised as to where lay the burden of proof.

■ We do not overlook medical testimony that the injuries resulting from the fall were the cause of death. That testimony is not unequivocal. That aside, it was so much matter of opinion that, for this case, it is not controlling. It did not take the issue out of the realm of fact.

Here was a disabling disease, with so much impairment of faculties, both mental and physical, that it might have been con-

sidered as contributing to the accidental fall from the window, if that is what happened. Furthermore, the jury could have concluded that the disease substantially aided the fall in causing the death which came about an hour later. We cannot say that such a view is without the support of reasonable inference. It was not error to submit the issue.

■ As may be surmised, the theory most stressed for the defense is that of suicide. Accidental death, automatically excluding suicide, was made the condition of recovery of accident benefits. Therefore, plaintiff properly assumed the burden of proof to negative suicide under the rule of McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 158 N. W. 967; Backstrom v. New York L. Ins. Co. 194 Minn. 67, 259 N. W. 681; New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726, 114 A. L. R. 1218.

Although there is no issue here as to the burden of proof, plaintiff having assumed it, something may properly be added to avoid future misunderstanding. Such confusion as there is arises from "the failure to distinguish between suits on insurance policies * * * which insure against death as a result 'of bodily injuries effected solely through external, violent and accidental means' and suits on those policies which insure against death but which contain a proviso avoiding the policy if the insured dies by his own act." Watkins v. Prudential Ins. Co. 315 Pa. 497, 507, 173 A. 644, 649, 95 A. L. R. 869, 875; see also Jefferson Standard L. Ins. Co. v. Clemmer (4 Cir.) 79 F. (2d) 724, 103 A. L. R. 171.

In accident cases the burden is upon plaintiff to establish what the policy makes condition precedent to recovery, i. e., accidental death, and so to exclude suicide. But in the life insurance cases where death from suicide, strictly speaking, is an exception from or avoidance of the policy, the burden is upon the insurer.

■ It is insisted that plaintiff was entitled to have the jury instructed that "there is in law a presumption against suicide." On the refusal of that instruction error is assigned. So there is presented the question whether the party in whose favor such a presumption operates is entitled to have it go to the jury.

This seems to be the first time that the question has been presented here in such precise and compelling form. Its solution has required our reconsideration of the function of nonconclusive presumptions and their place in the processes of jury trials. The field is, as all its explorers know, cumbered with inaccurate and contradictory assertion, too much of it contributed by judges.

We have just used the phrase "nonconclusive presumptions." The implication is that there are also conclusive presumptions. Not so if we are to think with desirable precision. What we term a conclusive presumption is really a rule of law. We agree with Dean Wigmore (5 Wigmore, Evidence [2 ed.] § 2491) that, strictly speaking, all presumptions are those of law, and that there are, in the proper sense, none of fact. When we leave law for fact, it is better to speak of inference, or deduction, or mere argument, rather than presumption. 20 Am. Jur., Evidence, § 162.

We are now not only in the field of rebuttable presumptions, so-called. We are also within the restricted area of the presumption against suicide. So our decision concerns no other, although of necessity discussion and implication cannot be so limited.

There is authority that presumptions are evidence. Annotation, 103 A. L. R. 185, 191. But the weight of judicial conclusion is the other way. *Idem.* We deny probative weight for the presumption against suicide. Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467. So does the United States Supreme Court. Del Vecchio v. Bowers, 296 U. S. 280, 56 S. Ct. 190, 80 L. ed. 229; New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726. If a presumption is not evidence, why should it go to the jury for any purpose? A negative answer is compelled if the presumption be given its proper bearing and no more.

The function of a presumption, as shown first by Thayer and then by Wigmore (Thayer, Preliminary Treatise on Evidence, p. 339; 5 Wigmore, Evidence [2 ed.] §§ 2490-2491) is solely to control decision on a group of unopposed facts. Given death from violence, without more, decision must be that it was accidental. So also an unexplained and otherwise unexplainable absence for seven years compels decision that the person is dead. In such

cases there is nothing for the jury. Decision is controlled by a rule of law. That is the true and limited function of a presumption. It controls, rather than permits, decision.

With us a presumption does not shift the burden of proof. McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 158 N. W. 967; Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739. This seems to be the point at which Mr. Morgan disagrees with the Thayer-Wigmore doctrine. His conclusion is that there should be a general rule, by "uniform statute" if need be, "that the sole effect of every presumption shall be to place upon the opponent the burden of persuading the trier of fact of the nonexistence of the presumed fact." Morgan & Maguire, "Looking Backward and Forward at Evidence." 50 Harv. L. Rev. 909, 913.

A presumption may and frequently does shift the burden of going on with the evidence. That is to say only that it makes a *prima facie* case. If the trial stops there, without further evidence opposing the case so made, there is nothing for the jury. By nonsuit or directed verdict, the judge decides the issue as one of law. If, however, the *prima facie* case is met by adequate evidence, the case goes to the jury with the burden of proof where it was in the beginning. So the presumption is properly appraised as a mere "procedural device" for allocation of the burden of going on with evidence. Where no further evidence is forthcoming, it requires decision as matter of law for the unopposed *prima facie* case. That view has long been widely held. It has the support of preponderant authority. Note, 114 A. L. R. 1226. Recently it has been adopted by the Supreme Court of the United States, New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726, overruling, on this point, Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. ed. 308.

It follows that if the case is one for the jurors the presumption should not be submitted as something to which they may attach probative force. The weight of the evidence is for them, to be ascertained on the scales of their experience and their judgment, rather than those of the judge. It would be an intrusion into

their field to suggest that they substitute for any real evidence, or any reasonable inference therefrom, the assumed weight of something which is not evidence. A presumption not being evidence, it should be no more subject for such an instruction than any other nonevidentiary factor.

There is authority (Annotation, 103 A. L. R. 191) authorizing submission of a presumption to aid the jury if they find the evidence in doubt or equipoise. But in such a case it is the jury's duty to find for the negative, the affirmative not having produced that preponderance of evidence necessary for decision in its favor. To instruct them that by use of a presumption they may tip the scale, otherwise in balance, for the affirmative, is to allow them to base decision upon something which is not evidence. (While not always so, we assume for convenience of statement that the affirmative always has the burden of proof.)

Being unable to find any legitimate purpose to be served by an instruction allowing the jury to give weight to a presumption as of law, in addition to the facts on which it is based, we hold such direction improper. The jury gets all the facts. Theirs is the exclusive function of reasonable inference therefrom. In addition, they should not get, ready made from the court, a deduction to which they are authorized to attach independent probative value. To allow that would be to assign evidentiary value to that which is not evidence.

Where a presumption keeps a case from going to the jury, it is because the facts, under the law, permit of but one decision. If the issue reaches the jury, it is because the evidence will support a verdict either way. That the judge decides as matter of law. In so doing he determines no issue of fact—which answers the argument that to refrain from instructing on a presumption amounts to taking from the jury an issue of fact. See dissenting opinion in New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 504, 82 L. ed. 726, 731, 114 A. L. R. 1218. All the judge does is to say as matter of law that there is or is not an issue of fact. If there is, it should go to the jury on the evidence for their own inferences, to be drawn without artificial aid of any

suggestion by the judge that the law has one ready made, to which they may give independent probative value. The jury should not be told that there is any rule of law permitting them to tip an otherwise balanced scale and so come to an affirmative decision where, without the presumption, the evidence requires one for the negative.

In all this we do not mean to say that in a proper case it would be error for a judge to instruct, in his discretion, that in one possible condition a presumption would control. To illustrate, the evidence of suicide may consist wholly of testimony which the jury may discredit. In such a case it would be proper to charge them that, if they did reject all such evidence as incredible, it would be their duty to find the death accidental. That would be by reason of the presumption, as a rule of law, operating on unopposed facts. The discredited evidence rejected, the presumption is brought into operation, not as evidence, but as law controlling decision. And that is just the function that a judge, trying the case without a jury, should give a presumption.

Most of what has been written on the subject, in and out of court, has treated the problem as though it could arise only in jury trials. That is wrong. If a presumption is not evidence, a trial judge has no more right so to consider it than he has to give it to a jury as evidence. When, however, the decision of fact has been made and it is under review, what was in earlier stages a presumption may come to the support of the verdict or finding. But if so, its weight is solely that of an inference. Its effect then is logical rather than legal. Its function as a rule of law has ceased. Its only remaining force is as reasonable deduction from evidence.

Of all that this case is illustrative. The evidence of Mr. Ryan's physical condition and its effect upon his mental attitude, together with the circumstances of his death, dispelled the presumption. That does not mean that plaintiff, having the burden of proof, necessarily failed as matter of law to sustain it. The presumption, as rule of law compelling decision, was dispelled by the evidence. But the facts, we assume, may still have permitted an

inference by the fact triers, with the same result as, without evidence, the presumption would have required. In short, the fact that a conclusion is no longer compelled by legal presumption does not mean that it is no longer permissible by reasonable inference. In rare cases is the evidence of suicide so persuasive as not only to dispel the presumption but also to require decision, as matter of law, that death was not accidental. Vacek v. Prudential Ins. Co. 226 Wis. 454, 277 N. W. 100, is such a case.

The theory of presumptions and their function, as here considered and adopted, runs counter to much that has been said in earlier decisions. We attempt no explicit expurgation. By way of illustration, it may be said that we probably would not now sustain the instruction of presumption against suicide which we did sustain in Garbush v. New York L. Ins. Co. 172 Minn. 98, 214 N. W. 795. To the extent that their implications are opposed to what is here declared, such decisions as that in Jasinuk v. Lombard, 189 Minn. 594, 250 N. W. 568, should be ignored.

The case has forced upon us a choice between two theories. Perhaps we should have made it long ago. This decision was forecast in Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467. What we here set forth contains little if anything that is original. Our citations will lead to more intensive and better treatment of the subject. The effect of the implications upon presumptions other than that against suicide must be left for future survey. Probably it is unnecessary to observe that the presumption of innocence is in a special class of its own. State v. Sailor, 130 Minn. 84, 153 N. W. 271.

Orders affirmed.