BARBARA J. STEINHAUS, TRUSTEE FOR THE
HEIRS OF JAMES B. STEINHAUS, v.
ARNOLD W. ADAMSON.

201 N. W. 2d 264.

September 29, 1972—No. 43156.

388

*Erickson, Zierke, Kuderer, Utermarck & Sinor* and *Elton A. Kuderer,* for appellant.

*DeParcq, Anderson, Perl & Hunegs* and *Robert E. Anderson,* for respondent.

Heard before Knutson, C. J., and Peterson, Kelly, and Todd, JJ. Reconsidered and decided on the record by the court en banc.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying defendant's motion for a new trial.

The case arises out of a collision between an automobile driven by plaintiff's decedent and one driven by defendant, Arnold W. Adamson.

County Road No. 6 in Galena Township, Martin County, runs in an east-west direction. It is 36 feet wide. County Road No. 52 runs in a north-south direction and is about 25 feet wide. It intersects County Road No. 6 at right angles, and south of the intersection County Road No. 52 becomes a township road. Both roads are

of gravel construction, and the intersection is not controlled by any type of stop sign. To the west of the intersection there is a dip in the road which at least partly obstructs visibility to the north as an automobile driver approaches from the west.

Defendant was proceeding east on County Road No. 6. The collision between the automobiles occurred about 6:50 p. m., at which time it was still daylight.

Defendant was 52 years of age at the time of trial. He is an implement dealer, is married, and lives in Trimont. He was on his way to call on a customer near Truman, which is about 16 miles from Trimont, and had planned then to take his wife out to supper. He testified that some distance before approaching the intersection he was traveling about 50 miles per hour. Both he and his wife suffered amnesia and have no recollection of the occurrence of the collision. Plaintiff's decedent was killed in the collision, so there were no eyewitnesses who could testify to what actually happened.

Decedent was employed by Duane Flohrs, a farmer whose home was north and west of the intersection. Decedent lived on a farm south of the intersection. On the fateful evening he left the Flohrs farm about 6:45 p. m. There were two routes he could use in going to the farm home where he lived. On leaving the Flohrs farm, he could travel west on a road parallel to County Road No. 6, turn at an intersecting road parallel to and a mile west of County Road No. 52, and then travel a mile south, enter County Road No. 6 and travel east to the intersection involved, and then turn south to go to the place where he lived. Alternatively, he could turn east when he emerged from the road entering the Flohrs farmstead, travel a short distance to County Road No. 52, and then go south. While there is no direct proof in this case as to which route he took on the fateful evening, Mr. Flohrs testified that it was more likely that decedent turned east and then traveled south on County Road No. 52 than that he turned west. Flohrs was not permitted to state which route would be the most direct route, even though he had lived in the neighbor-

hood all his life. It is apparent that if decedent had turned west and then traveled south to County Road No. 6 he would have had to return east the same distance he had traveled west.

There is no question but that defendant was traveling east on County Road No. 6.

Deputy Sheriff Leonard Williamson arrived at the scene of the collision a short time after it occurred. He located the car of the decedent approximately 12 to 15 feet south of County Road No. 6 and approximately 172 feet east of the point of impact, lying on its right side. He located defendant's vehicle on its wheels approximately 156 feet southeast of the apparent point of impact. The point of impact was located by dirt, debris, and tire marks made after the impact and was described as being 4 to 5 feet southwest of the center of the intersection. The deputy sheriff testified that it appeared that at the time of the impact both cars were on the right side of the road, but he was not permitted to explain how he came to that conclusion. He testified that he observed no skid marks at the scene of the accident.

Richard Olson, who lives a short distance south of the intersection, testified that he arrived at the scene shortly after the accident occurred. He looked for marks of the vehicles involved and testified that he observed tire marks on the east-west road, that is, County Road No. 6, that he estimated to be 8 car lengths long and which were 1 to 1½ feet south of the center of the road. He testified that he observed tire marks on the north-south road, County Road No. 52, which he estimated to be one car length long. He observed that the tire marks appeared to go to the point of impact on the southwest corner of the intersection and then extend out to the place where the cars were located by the deputy sheriff. There is no question but what the impact occurred between the left front of defendant's vehicle and the right front of decedent's vehicle.

At the close of the evidence, plaintiff moved for a directed verdict on the issue of the negligence of decedent. The court determined as a matter of law that there was no evidence that

would support a finding on the part of the jury that decedent was negligent sufficient to rebut the statutory presumption of due care. He withdrew the issue of comparative negligence from the jury and submitted only the question of whether the evidence established the causal negligence of defendant. The jury returned a verdict in favor of plaintiff, and this appeal has been taken from a denial of defendant's post-trial motion for a new trial.

The case again raises the question of proper use and application of Minn. St. 602.04, which provides:

"In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. *The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action.*" (Italics supplied.)

The statute was adopted in 1957. The only change in the law as it existed under TePoel v. Larson, 236 Minn. 482, 53 N. W. 2d 468 (1952), is the italicized portion. As stated above, the trial court was of the opinion that there was no evidence from which an inference of decedent's negligence could be drawn. Respondent here takes the same position. In her brief she says:

"* * * It was abundantly clear at that time [when the court had under consideration her motion for a directed verdict], as it is now, that defendant was unable to produce a scintilla of evidence that decedent failed to act as a reasonably prudent man, which is of course, the test with which we are concerned.

* * * * *

"* * * There is no direct evidence to support the defendant's contention concerning how the accident happened."

The difficulty is that the same is equally true as applied to the defendant. There were no eyewitnesses. One party is dead and defendant and his wife remember nothing about the occurrence

of the collision. The whole case on both sides rests on circumstantial evidence.[1] The only positive evidence relating to defendant's conduct is that he was driving east and that his speed some distance from the intersection was about 50 miles per hour. Of course, that is no proof of negligence. If we were to base our decision only on direct proof, there is none as to either party.

Many cases of this kind must be decided on circumstantial evidence. Sometimes physical facts speak louder than words. Jury verdicts are often based on probability rather than mathematical certainty. We are convinced that in this case the jury could infer that decedent was traveling south; that both cars were in their proper lanes of travel; that the location of damage to the cars, debris and dirt showing the point of impact, and the place where the cars came to rest clearly permitted the inference that defendant had the directional right-of-way and that the decedent may have failed to yield it as he was required to do by law. It is true that the jury could infer that defendant was also guilty of negligence; but under our comparative negligence law it was then for the jury to determine what percentage of negligence was attributable to each party. Under these circumstances we are convinced that it was error on the part of the trial court to decide as a matter of law that decedent was free from negligence, unless the statute on the presumption of due care prevails even though the evidence would permit an inference of negligence on the part of the one in whose favor the presumption operates.

We come then to the crucial question: Namely, what effect should be given the statute declaring the presumption of due care in a case also involving our comparative negligence statute? So much has been written on the subject of whether presump-

[1] It has been held that the presumption of due care applies as well to one who suffers from amnesia as to one who is dead. Klink v. Harrison, 332 F. 2d 219, 229 (3 Cir. 1964). While our statutory presumption does not apply to victims of amnesia, if the common-law presumption applies, affirmative evidence must be required to overcome it the same as is required to overcome our statutory presumption in the case of a person who is dead.

tions are evidentiary or procedural in nature that it is futile to cite authorities on one side or the other. Authorities to support either view can be found. At the outset it should be noted that the statute provides not only that the jury shall be instructed on the existence of the presumption but that it shall determine whether the presumption is rebutted by the evidence. If one part of the statute is to be given effect, both parts should be given the same weight. That was not done here.

Ultimately the question resolves itself into whether the presumption of due care itself is evidence or whether it is a procedural device to determine who prevails in the action and who must go forward with the evidence.[2] Our cases since enactment of the statute are of little comfort to trial judges who must instruct juries on this presumption as set forth in our statute. No less has it been difficult for us to apply.

In Lambach v. Northwest Refining Co. Inc. 261 Minn. 115, 111 N. W. 2d 345 (1961), a suit brought to recover for the death of an individual was consolidated with one brought against the representative of his estate. In a per curiam opinion, this court ordered a new trial, apparently on the ground the verdict was based on speculation and conjecture. Three justices concurred specially, being of the opinion that it is quite impossible to consolidate a case brought to recover for the death of an individual and a case in which the representative of his estate is sued, for the reason that under the statute the presumption prevails in the case to recover for death but not in the case where the decedent's representative is sued. In other words, it is presumed that the decedent was exercising due care when the trustee sues to recover for the benefit of his heirs; but it is not presumed he was exercising due care when someone else sues the representative of his estate. How can a jury ever understand such legal legerdemain?

In another concurring opinion in Lambach, Mr. Chief Justice Dell expressed the view that the legislature must have intended

---

[2] See. Annotation, 5 A. L. R. 3d 19, 26.

to restore the evidentiary nature of a presumption of due care as it existed prior to Ryan v. Metropolitan Life Ins. Co. 206 Minn. 562, 289 N. W. 557 (1939), but it is significant that no member of the court as it then existed concurred with this statement. Similarly, in Roeck v. Halvorson, 254 Minn. 394, 95 N. W. 2d 172 (1959), 44 Minn. L. Rev. 352, there is a statement which would indicate that the presumption has some evidentiary value. But in the same case we said that in a proper case the court could direct a verdict even against the presumption.

In Krafft v. Hirt, 260 Minn. 296, 110 N. W. 2d 14 (1961), we considered the effect of a prima facie case of negligence created by statute, and there compared the rule with that of the Roeck case. Mr. Chief Justice Dell, author of the concurring opinion in Lambach, wrote the court's opinion in Krafft and said (260 Minn. 301, 110 N. W. 2d 18):

"The problem here is analogous to that raised in Roeck v. Halvorson, 254 Minn. 394, 95 N. W. (2d) 172. We there held that, even though the statutory presumption of due care is of an evidentiary nature and the statute requires that it be given to the jury, the court may, nevertheless, in proper cases find that the presumption has been rebutted as a matter of law. Similarly, where the evidence rebutting a prima facie case of negligence is of such a nature that the minds of reasonable men cannot differ about it, it is incumbent upon the court to determine the issue of negligence as a matter of law."

Again, in Benson v. Dunham, 286 Minn. 152, 174 N. W. 2d 687 (1970), we upheld the action of the trial court in finding that the statutory presumption of due care had been rebutted as a matter of law.

If the position of the trial court and the contentions of respondent here are tenable, and the statutory presumption is evidence in and of itself, it is difficult to see how a court can ever find as a matter of law that there is no evidence justifying recovery by decedent's trustee. The best that can be said under these

circumstances is that there is evidence from which the jury can infer that both parties were negligent and can then proceed to assess the percentage of each party's negligence. We think the presumption should not be considered evidence but should be considered a procedural device that determines who would prevail if the evidence were to stop at that point.

This is particularly true now under our comparative negligence law. We took our law from Wisconsin. While Wisconsin has no statute such as § 602.04, it does give effect to a presumption of due care by a decedent and has dealt with it on a number of occasions. In McCarty v. Weber, 265 Wis. 70, 60 N. W. 2d 716 (1953), the Wisconsin court construed a presumption of due care like the one we had prior to enactment of § 602.04. The court said (265 Wis. 73, 60 N. W. 2d 718):

"All presumption of due care in lookout went out of the case when the evidence sufficient to support a contrary finding came in."

See, also, Callahan v. Van Galder, 3 Wis. 2d 654, 89 N. W. 2d 210 (1958); Schlichting v. Schlichting, 15 Wis. 2d 147, 112 N. W. 2d 149 (1961). Schlichting did not involve a wrongful-death case, but does discuss the effect of a presumption of due care.

We are convinced that the statements in Roeck v. Halvorson, *supra,* and in Lambach v. Northwest Refining Co. Inc. *supra,* that the statute was intended to restore the evidentiary nature of a presumption of due care are in error. All the statute did was to require the trial court to inform the jury that there was such a presumption and let the jury decide if it had been rebutted.[3] Otherwise, the last part of the statute would never have been included. As long as we continue to hold the legislature can enact such a statute, the jury should simply be informed of the exist-

[3] See Greene v. Willey, 147 Maine 227, 233, 86 A. 2d 82, 86 (1952), holding that the statutory presumption of due care in Maine does not undertake to change the substantive law and cases must be decided upon all the evidence presented.

ence of a presumption of due care and then told that if they find facts that will rebut the presumption it has no further place in the case. Otherwise, if a case is submitted on a special verdict under our comparative negligence law and the jury finds decedent was more than 50 percent to blame for the collision, can the court still order judgment for decedent on the presumption alone? To ask the question, it seems to us, is to answer it. A construction of the presumption statute which would permit the trustee of decedent to recover 100-percent damages even if decedent was more than 50 percent to blame would lead to such an absurd result that it would destroy our comparative negligence law.

We have not dealt with the effect of this presumption since adoption of our comparative negligence statute, but it is evident from the language of § 602.04 that the presumption is a rebuttable one; else, there would be nothing for the jury to pass on as the statute requires.

It would be much better if the statute were repealed. See, McBaine, *Presumptions: Are They Evidence?* 26 Calif. L. Rev. 519, 551. As applied to this case, if the jury were to find that decedent was going south and failed to yield the right-of-way and also find defendant guilty of causal negligence, it would proceed to determine the percentage of negligence attributable to each under our comparative negligence statute. The only other fair result would be that the court hold as a matter of law there is no proof of negligence on the part of either party. We do not think it is necessary to go that far. We are convinced that it was for the jury to determine whether negligence existed on the part of either driver or both and then to fix the comparative negligence of each.

In Reichert v. Rex Accessories Co. 228 Wis. 425, 279 N. W. 645 (1938), the Wisconsin court dealt with a case where there was no direct evidence, much as we have here. It said (228 Wis. 438, 279 N. W. 651):

"* * * We think the physical facts, as disclosed by the photo-

graphs and other evidence, not only overcome the presumption in favor of the deceased, but clearly show that he did not approach the point of turning in the traffic lane nearest the right-hand edge or curb of the highway and thus violated the statute."

Similarly, we are convinced that the physical facts in this case do present a jury question as to whether decedent was guilty of negligence.

Reversed and new trial granted.

TODD, JUSTICE (dissenting).

I disagree with the result reached by the majority under the facts of this case. I am in accord with the general principles of law stated in this opinion. However, I would hold that the statute, Minn. St. 602.04, is invalid since the legislature has no constitutional power to prescribe rules of evidence for the judicial branch of government.

Our decision in TePoel v. Larson, 236 Minn. 482, 53 N. W. 2d 468 (1952), clearly enunciates the rule to be followed in applying the presumption of due care; namely, the presumption is valid and remains in the case until rebutted by any evidence offered by the defendant. When the defendant does come forth with any evidence of decedent's negligence, the presumption should completely disappear from the case; and since I would hold the statute invalid, the jury should receive no instruction regarding this rule of law.

Consequently, the adoption of comparative negligence in Minnesota has no effect on the application of the rule. If the defendant offers no evidence to rebut the presumption of due care, the rule is valid and plaintiff should be entitled to a directed verdict as to decedent's lack of negligence. Such a result does not elevate the presumption of due care to an evidentiary status but merely permits the operation of a procedural rule regulating the burden of proof. There is no evidence for the jury to compare since the defendant has offered none. If the defendant does offer any evidence as to decedent's negligence, the rule disappears from the

case, it is tried as an ordinary negligence matter, and, as I have indicated above, § 602.04 should be ignored and the jury given no instructions whatsoever regarding the presumption of due care.

It is obvious that the presumption-of-due-care rule operates in a very narrow spectrum. If the evidence of defendant's negligence is clear and convincing, there is no need for the application of the rule. If defendant can carry the very light burden of coming forth with any evidence of decedent's negligence, the rule disappears from the case. Since the burden on the defendant is so extremely light, we should exercise a great deal of caution in denying to plaintiff the application of the rule. Particularly, if we must indulge in speculation regarding the evidence in order to deny to plaintiff the application of the rule, we defeat the general purpose of the rule—to act, in the trial court's words, as a shield to protect those who cannot answer.

The facts in this case would require that the jury engage in speculation in order to find any evidence of decedent's negligence. The physical position of the vehicles after the collision is not in dispute nor is the fact that marks leading back to the intersection establish the point of impact in the southwest quadrant and that the right front of decedent's vehicle and the left front of defendant's car were damaged. However, the testimony of Richard Olson regarding alleged markings in the road prior to the point of impact was completely discredited on cross-examination when he indicated that he could not identify these markings as having been made by the vehicles in question. Therefore, we can only speculate that decedent was proceeding south on County Road No. 52 at the time of the collision. We could also speculate that he was proceeding east on County Road No. 6 and made a proper right turn and was struck by defendant's vehicle. Even if we assume that defendant had the statutory right-of-way, we must speculate that he had maintained proper speed so as not to have forfeited his statutory right-of-way.

Again, if we assume that defendant had the statutory right-of-way, it appears from the majority opinion that this prima

facie rule of law is being elevated to evidentiary status in order to find any evidence of decedent's negligence. It seems strange that in properly determining the nonevidentiary status of the presumption-of-due-care rule, the majority has inferentially elevated a highway traffic regulation to evidentiary status.

The facts of this case should require the application of the presumption-of-due-care rule. I would sustain the trial court's order directing a verdict in favor of the plaintiff on the issue of decedent's negligence, and there is sufficient evidence to sustain the jury's determination of defendant's negligence.