## EILEEN A. FIRKUS v.
## JAMES J. MURPHY AND ANOTHER.

246 N. W. 2d 864.

November 5, 1976—No. 45950.

*Robins, Davis & Lyons, Arnold M. Bellis, Carter & Carter,* and *Robert Carter,* for relator.

*Warren Spannaus,* Attorney General, *Peter Sipkins,* Solicitor General, and *Winston Ehlmann,* Assistant Attorney General, for respondent state treasurer.

Heard before Peterson, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

On certiorari to the Workers' Compensation Board relator, the widow of Alexander T. Firkus, challenges the finding of the commission that her husband was not at the time of his death acting as an employee of James J. Murphy. We affirm.

Murphy, an independent timber logger who was engaged in a rush logging project, became stalled in the woods on March 23, 1972, when his automobile malfunctioned. He walked several miles from the woods to a forest ranger station where his wife and decedent Firkus found him. Firkus gave him a ride home. Early the next morning, Firkus, Murphy's brother-in-law, drove Murphy back into the woods and remained with Murphy there. Firkus had been unemployed since October 1971, recovering from

a back injury and a subsequent injury that disabled his right hand.

When they arrived in the woods, Murphy proceeded to drive his tractor and skidded the logs out of the woods. Firkus marked these logs according to size, which Murphy otherwise would have done himself for later inspection and inventory. Murphy climbed off the tractor at one point, whereupon Firkus climbed onto it. Murphy told him to get off the tractor, remonstrating that Firkus did not know how to handle it and would be unable to do so with his injured hand. Firkus did not climb down from the tractor, saying that he drove the same kind of tractor on his farm.

Murphy, thinking that his brother-in-law was so strongminded and stubborn that it would be fruitless to argue with him, thereupon undertook to explain to Firkus how to operate the winch. Murphy, however, hooked and unhooked the logs being skidded from the woods, a part of the task he had otherwise done himself as part of the tractor operation. On the second haul Murphy told Firkus he was driving with too much cable out; and on the third or fourth haul the tractor overturned and Firkus was fatally injured.

Minn. St. 176.011, subd. 9, defines an employee as "any person who performs service for another for hire * * *." The issue is whether Firkus was performing a service for hire or whether, as the commission found, he was a volunteer. This is a question of fact. Our function on review is to determine whether the commission's findings are reasonably supported by the evidence. Dobosenski v. Carlton County, 280 Minn. 58, 60, 157 N. W. 2d 847, 848 (1968).

The evidence upon which claimant relied is: That Firkus performed some work; that some weeks prior to the fatal accident Murphy advised Firkus that when he was able to work Murphy would hire him; that Murphy had attempted to hire someone to help him skid logs on this project but had been unsuccessful;

and that Firkus had told a deputy sheriff that he was "going into the woods" with Murphy, an expression commonly used to refer to logging work. Claimant additionally argued that she was entitled to a presumption that one injured while in another's service is an employee.

There was, however, no direct evidence that Murphy intended to employ Firkus on that day or that he had requested more than a ride back into the woods. While Murphy may have obtained some benefit from Firkus' log marking, there is no clear evidence that Firkus expected payment for his effort. Murphy testified that he did not intend Firkus to be his employee and that he did not intend to compensate him for his activity. The commission, of course, could credit that testimony. It is clear that Murphy did not request Firkus to mount the tractor but that Firkus did so on his own initiative. The fact that Murphy did not force Firkus off the tractor is not determinative; the fact that Murphy asked Firkus to get off the tractor after he had mounted it supports Murphy's testimony that he did not intend Firkus to be his employee and that he did not intend to compensate Firkus for his activities.

There is, as claimant argues, a presumption that one injured while in another's service is an employee, a presumption that is useful in distinguishing an employee from an independent contractor. That, however, is not this case, for the issue is whether Firkus was in Murphy's service in any capacity. Presumptions cease to operate, in any event, as soon as evidence which can support a contrary finding is admitted. See, Steinhaus v. Adamson, 294 Minn. 387, 201 N. W. 2d 264 (1972).

The burden of proving status as an employee rests upon the claimant. Holm v. H & S Asphalt Co. 283 Minn. 330, 167 N. W. 2d 743 (1969). Whether or not we might have decided the case differently were we in the position of the commission, the dispositive issue is whether the evidence reasonably supports the commission's factual finding that decedent was a volunteer and

had no implied contract of employment. We hold that the commission's finding is not without requisite evidentiary support.

Affirmed.

SCOTT, JUSTICE (dissenting).

The record seems convincing that the decedent was an employee. Where the conclusions of the commission are manifestly contrary to the evidence, they cannot stand. Nierengarten v. State Department of Highways, 282 Minn. 231, 163 N. W. 2d 862 (1969).

Murphy attempted to hire Firkus to assist him in December or January. Before the incident involved here, Firkus had told the local deputy sheriff that he was "going into the woods" with Murphy—a phrase commonly understood as meaning that he was going logging. Murphy did not merely borrow Firkus' car. Firkus got up before 6 a. m. and drove him 30 miles to the worksite for this rush job. While Murphy worked, Firkus began to mark log sizes on the timber—an activity which benefited Murphy. Although Murphy protested when Firkus climbed on the tractor because Murphy feared the latter would be unable to operate it with his injured hand, Murphy acquiesced and assisted Firkus by explaining to him how to operate the winch. Firkus' service in operating the tractor enabled a division of labor whereby Murphy was able to hitch and unhitch the logs on the ground while Firkus remained on the tractor. In marking the logs and operating the tractor, Firkus was providing aid which Murphy previously had offered to pay another party to provide. According to a statement given by one witness, Murphy's first explanation to the witness after the accident was, "a tractor tipped on my helper." As the dissenting member of the three-man Workers' Compensation Board stated:

"I do not believe the alleged employer's testimony in this matter. I do not believe that it was the intention of Mr. Firkus and Mr. Murphy that Mr. Firkus do the work in the woods until at least noon under the circumstances of this case without an

agreed amount of payment. If Mr. Firkus had been merely interested in getting the car of Mr. Murphy in operation, he would have done that and would not have intended to spend the other hours in the woods."

It is unlikely that a man who had been unemployed for several months would get up before 6 a. m., drive 30 miles into the woods and remain at a worksite assisting another on a rush work project, and not expect compensation. Murphy's assistance to Firkus in using the winch and the resulting division of labor support a contrary finding.

I would reverse.

YETKA, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Scott.